[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR MODIFICATION OF CUSTODY (#234)
This is chapter two in the ongoing battle over the raising of Joshua Ford, who is now five years old (5/2/97). Chapter one took place in 1999 when the plaintiff (hereinafter "Mother") and the defendant (hereinafter "Father") decided to dissolve their marriage. They disagreed as to where Joshua would reside. Mother wished to relocate with him from Greenwich, Connecticut to the Boston, Massachusetts area. A fully contested trial was held on that issue.
On January 3, 2000, the court (Novack, J.) issued its decision. It determined that it was in Joshua's best interest that he live primarily with his Mother and permitted him to move with her to Framingham, Massachusetts. In accordance with the request of the parties, joint legal custody was awarded and parenting time was divided approximately equally. Joshua was two and one-half years old, and the court indicated it would review this arrangement when Joshua complete kindergarten or earlier upon request of either party.
The Father has filed the present motion. He seeks modification of the custody order and requests sole legal and physical custody of his son. He CT Page 10154 alleges the following substantial changes have occurred since the original orders were entered.
1. A deterioration in the Mother's health due to a recurrence of Cushing's disease and as a result her ability to care for Joshua has been materially impacted in a negative way;
2. A change in Joshua's behavior and emotional state; in that he has been missing school and has been suffering from emotional and behavioral problems;
3. The Mother has refused to discuss parenting issues with court appointed professionals and has made several significant unilateral decisions regarding Joshua's health and schooling against the input and views of the Father.
A lengthy hearing was held on this motion over a period of eight days. Several witnesses were called and many exhibits were presented. The attorney for the child and his guardian ad litem participated in the proceeding.
Each side produced lay witnesses who testified as to their fitness as a custodial parent and as to their relationship with their son. It is undisputed and the court finds that both parties enjoy close, loving relationships with Joshua and are not only fit but excellent custodial parents.
In addition to lay witnesses, the parties offered the testimony of mental health experts. The Father called Doctor Harry Adamakos, a clinical psychologist.
Dr. Adamakos had testified at the original trial. He performed an updated evaluation of the child and his parents and submitted lengthy written reports. (Exhibits 2 and 3). In addition, he testified at length as to his findings and recommendations.
The doctor reported the following which the court finds to be credible and adopts as its findings:
1. The child is a bright, articulate, energetic little boy. However, he is being negatively affected by the situation that surrounds him.
2. At the time of trial of the dissolution action between the parties, the child was functioning at the highest level for his age and was minimally affected by the contentiousness of the parties. He was a happy and healthy child. CT Page 10155
3. The present evaluation revealed a dramatic change in the child. He was found to be lacking in emotional resiliency and unable to cope effectively with the stress existing around him. Joshua is not as carefree as three years ago and is functioning at lower levels than previously. He shows signs of regressive behavior and has not reached developmental levels expected at his current age.
Dr. Adamakos recommended, among other things, that sole legal and physical custody be awarded to the Father.
The guardian ad litem testified and concurred with the recommendation of Doctor Adamakos.
The Mother presented as her expert witness Doctor Francis X. Gregory, a clinical psychologist, who is a faculty member of the Yale Child Study Center, Yale University School of Medicine. He performed an evaluation of Joshua and his parents commencing August 2, 2001 and completed his sessions with them in December, 2001. He was requested to determine if the existing custody and visitation arrangement is in Joshua's best interests and, if not, what alterations of the current arrangement are recommended.
The doctor testified at length and his report was entered in evidence. (Exh. 1). Doctor Gregory reported the following, which the court finds to be credible and adopts as its findings.
1. The parties have failed to demonstrate the ability to act cooperatively in making decisions regarding their child. The dynamics in their relationship have rendered them unable to do so. The hostile, distrustful process in which they engage has had a destructive effect on Joshua.
2. Both parents are caring and competent, each capable of raising Joshua effectively.
Dr. Gregory recommended, among other things, that the Mother be awarded the ultimate decision-making authority and primary physical custody. It was significant to him that Joshua has a strong primary nurturing relationship with his Mother.
The Father has failed to sustain his allegation that there has been a deterioration in the Mother's health since the original judgment that impacts her ability to care for Joshua.
The Mother, as a result of Cushing's disease, required surgery post CT Page 10156 dissolution which incapacitated her for a short period of time. No evidence was presented by the Father as to any lasting negative effects because of the disease or surgery. There was no evidence of the probability of the recurrence of the disease. The Mother testified, and the court finds, that she currently has no health problems that restrict her parenting abilities.
The Father has sustained his burden of proof that there has been a substantial change in Joshua's behavior and emotional state since the previous orders were entered. The evidence is overwhelming that this unfortunately is the case.
A modification of the existing orders is required.
The court is mandated by Section 46b-56 of the General Statutes, when modifying an order with respect to custody and visitation, to be guided by the best interests of the child. With this standard in mind, the court has carefully considered all the evidence as well as the excellent arguments of counsel in reaching the decisions hereinafter rendered.
The decision in this case is an extremely difficult one. Each parent is an excellent custodial parent with a close, loving relationship with the child. Joshua is indeed fortunate to have two concerned parents who want to be meaningfully involved in his life.
Compounding the situation is that as a result of the earlier hearing, the Mother has relocated to her former home area and has started her new life there accompanied by her son. To afford the Father the relief he requests would possibly uproot the Mother's life once again.
The court is not unmindful of the problems and the effects of its decision, but it is obliged to serve the needs of the child, first and foremost.
In the original trial, the parties requested they be awarded joint legal custody. The court expressed reservations as to the ability of the parties to communicate on child rearing issues but reluctantly decided to grant their request and give them the opportunity to work together as responsible parents. It recommended their consulting a mental health professional to assist them in problem solving.
The parties have failed to accomplish the desired result. They, in fact, have failed miserably. In retrospect, it might have been asking too much of them. The dynamics in their relationship which existed during their marriage and resulted in the failure of the marriage did not change after they were divorced. Their relationship continues to be CT Page 10157 characterized by hostility and mistrust.
A great deal of time and effort was spent during the trial to persuade the court which party was at fault and the cause of their inability to co-parent. Neither party is found to be completely blameless. It was not the purpose of this hearing, however, to assess fault in the battle of personalities.
The court has concluded that some drastic changes in the current custodial arrangement are required.
The Father's motion is granted. The following orders may enter effective August 25, 2002:
(1) The Father shall have sole legal custody of Joshua. He shall confer with the Mother, with the assistance of a mental health professional if requested by the Mother, before any major decision is made with respect to the health, education religion and welfare of Joshua.
The following factors were significant to the court in reaching this decision:
 A. The Father's greater ability to attempt to foster a relationship between Mother and child and have the Mother involved in Joshua's life;
B. The Father's willingness to seek therapy for the child;
 C. The Father's bona fide attempts to seek the use of a mediator to assist in reaching parental decisions;
 D. The Father's ability to make important decisions in a timely fashion after appropriate investigation.
(2) The Mother has indicated that if Joshua is required to attend school in Connecticut she would relocate to Connecticut.
It is ordered:
 A. If the Mother relocates to Fairfield County, Connecticut, she shall have primary physical custody of Joshua. Upon request, the court will conduct a hearing to establish a detailed parenting plan.
B. If the Mother remains living in Massachusetts or until she relocates to Fairfield County, Connecticut, the Father shall have primary physical custody of Joshua. CT Page 10158
The Mother shall have the following parenting time with Joshua:
 1. School Year: Three weekends each month during the school year as set forth below:
 By the first day of the prior month written notice should be given to the Father of the weekends selected; only one shall be in Massachusetts and the other two in the state of Connecticut.
 A. For each long three-day holiday weekend of the month from 6 p.m. on the start of the holiday weekend (Friday in the case of a Monday holiday and Thursday in the case of a Friday holiday) to 6 p.m. of the end of the holiday weekend, or in the event there is no such long weekend during the month, then the Friday selected at 6 p.m. to the immediately following Sunday at 6 p.m.
 B. Each Wednesday evening in the Greenwich area from close of school, or 3 p.m. if no school, until 8 p.m.
2. Holidays: The parties shall continue to alternate all legal and religious holidays.
3. School Breaks: The Mother shall have Joshua during the winter and spring vacation periods.
4. Summer: The Mother shall have Joshua for the summer, beginning at 6 p.m. on the first Sunday after the last day of school until 6 p.m. of the Friday immediately prior to the beginning of school. The Father shall have Joshua for a one-week, uninterrupted vacation during the summer, which can include the Fourth of July holiday for his semi-annual family gathering, and the Father shall have a four day long weekend during the summer. The Father shall notify the Mother in writing of his exact summer vacation dates by May 1 of the same year.
(3) With respect to transportation, each party shall make the complete drive between Greenwich, Connecticut and Framingham, Massachusetts, one time per visit (i.e., the Mother drives one way and the Father drives the other way). The Father, or his responsible adult designee, shall drive Joshua to Massachusetts at the beginning of the weekend, and the Mother, or her responsible adult designee, shall return Joshua to Connecticut at the conclusion of the weekend. The parties may also use alternate means of transportation, such as air, bus or train, if they desire, to assist in the implementation of this plan. Any changes to the time or location must be mutually agreed upon in writing. CT Page 10159
(4) The parties shall have Joshua on their respective birthdays.
(5) The Father shall have Joshua on Father's Day and the Mother shall have Joshua on Mother's Day.
(6) Neither party shall do anything that may estrange or interfere with the natural love and affection between Joshua and the other party. Neither party shall denigrate the other party, including to, or in the presence of, Joshua.
The whole purpose of this hearing was to do what is best for Joshua. The court expects the Mother to continue to play an important part in his life. The cooperation of the Father is needed for that to occur. Joshua requires the love, direction and guidance of both parents. Anything less would be unfair to him.
So Ordered.
Judgment may enter accordingly.
NOVACK, J.T.R.